**Entered on Docket
August 08, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed: August 07, 2007**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                            No. 04-41044 TK
                                                 Chapter 7
QMECT, INC.,

          Debtor.
_____/

QMECT, INC.,                                     A.P. No. 04-4171 AT

          Plaintiff,

   vs.

BURLINGAME CAPITAL PARTNERS,
II, L.P.; ELECTROCHEM FUNDING,
LLC,

          Defendants.
_____/

**MEMORANDUM OF DECISION**

    In this adversary proceeding, John Kendall (the "Trustee"), the trustee of the above-captioned chapter 7 debtor (the "Debtor"), seeks to avoid under 11 U.S.C. § 547(b) and recover under 11 U.S.C. § 550(a)(1) from defendant Burlingame Capital Partners, II, L.P. ("Burlingame") the value of the transfers of security interests in the Debtor's accounts receivable and inventory that occurred during

the 90 days preceding the filing of the Debtor's chapter 11 petition (the "Preference Period"). Burlingame moves for summary judgment, contending that, as a matter of law: (1) the Trustee will be unable to establish the fifth element of a preference claim under 11 U.S.C. § 547(b)(5); and (2) even if he can, Burlingame is entitled to a complete defense under 11 U.S.C. § 547(c)(5). For the reasons stated below, the Court concludes that the motion for summary judgment should be denied.

## SUMMARY OF UNDISPUTED FACTS

The Debtor filed a chapter 11 bankruptcy petition on February 27, 2004. Prior to its filing and during the chapter 11 phase of the case, before the case was converted to chapter 7, the Debtor operated an electroplating business. As such, the Debtor generated inventory and accounts receivable. At the beginning of the Preference Period-- on December 27, 2003--the Debtor had two secured creditors. The senior secured creditor was Comerica Bank ("Comerica"). The junior secured creditor was Burlingame. Both Comerica and Burlingame had security interests in virtually all of the Debtor's assets, which included accounts receivable and inventory.[1]

At all times during the Preference Period, Burlingame was undersecured: i.e, the value of its collateral, taking into account the amount of the senior secured debt, was less than the amount of

---

[1] Shortly before the Debtor's bankruptcy petition was filed, Burlingame purchased Comerica's secured claim. Shortly after the petition was filed, the principals of Burlingame formed defendant Electrochem Funding LLC ("Electrochem"), and the secured claim acquired from Comerica was transferred to Electrochem.

2

Burlingame's debt. During the Preference Period, some, if not all, of the accounts receivable and inventory in which Burlingame held a security interest at the beginning of the Preference Period generated cash proceeds. These proceeds were then spent in the continued operation of the business, and new inventory and accounts receivable were generated.

Pursuant to the after-acquired property clause in Burlingame's security agreement, Burlingame automatically acquired liens in the new accounts receivable and inventory generated during the Preference Period. On the petition date, the value of Burlingame's security interest in the Debtor's accounts receivable and inventory then in existence was greater than the value of its security interest in the accounts receivable and inventory in existence at the beginning of the Preference Period.[2] On the petition date, the Debtor was subject to unpaid employee wage claims for services provided during the Preference Period.[3]

---

[2] The Trustee's opposition to the motion incorporates the Declaration of Marc Lumer (the "Lumer Declaration"), the Debtor's accountant during the chapter 11, filed in support of his opposition to Burlingame's previous motion for summary judgment. The Lumer Declaration states that the increase in the value of the accounts receivable and inventory was $156,939.

[3] Schedule E of the Debtor's Schedules of Assets and Liabilities, which is attached to the Lumer Declaration, lists $83,433 in unpaid priority wage claims. As applicable to the Debtor's case, priority wage claims must have arisen during the 90 days preceding the filing of the petition. See 11 U.S.C. § 507(a)(3)(A). This provision has since been renumbered as 11 U.S.C. § 507(a)(4)(A). See Pub. L. No. 109-8, §§ 212, 1401, 119 Stat. 23, 51, 214.

3

**LAW APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That burden may be met either by producing evidence sufficient to entitle the moving party to judgment in its favor or by raising a point of law, based on the undisputed facts, with the same effect.

If the moving party meets its initial burden by producing evidence, the party opposing the motion must come forward with specific facts establishing a genuine factual issue and may not rely on mere allegations or denials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The trial judge must accept as true, all evidence offered by the party opposing the motion and must draw all legitimate inferences in its favor. Windon Third Oil and Gas Drilling P'ship v. Federal Deposit Ins. Corp., 805 F.2d 342, 346 (10th Cir. 1986), cert. denied 480 U.S. 947 (1987). Where the moving party's contention is that the plaintiff's claim must fail as a matter of law, based on undisputed facts, the motion may be decided without any additional evidence. See Thrifty Oil Co. v. Bank of American Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003).

4

The plaintiff has the burden of proof with respect to the main elements of a preference claim. 11 U.S.C. § 547(g). A defendant has the burden of proof with respect to any affirmative defense asserted to a preference claim. Id.

**DISCUSSION**

As noted above, Burlingame seeks summary judgment on two grounds. First, it contends that, as a matter of law, under the facts recited above, the Trustee cannot establish that the transfers of security interests in the accounts receivable and inventory acquired during the Preference Period permitted Burlingame to receive more than it would have received in a chapter 7 liquidation had the transfers not occurred. 11 U.S.C. § 547(b)(5). Second, Burlingame contends that, even if the Trustee can establish this element of a preference claim, it is entitled to a complete defense under 11 U.S.C. § 547(c)(5). The Court will address each argument in turn.

**A. FIFTH ELEMENT OF A PREFERENCE CLAIM**

As relevant to this proceeding, 11 U.S.C. § 547(b) provides that, "[e]xcept as provided in subsection (c)..., the trustee may avoid any transfer of an interest of the debtor in property–

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made–

    (A) on or within 90 days before the date of the filing of the petition;...

5

...

  (5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Each of the elements recited above must be established for the trustee to prove a claim to avoid a preferential transfer by the debtor. As noted above, Burlingame contends that the Trustee will be unable, as a matter of law, to establish the fifth element of a preference claim.

  The transfer of a security interest may be avoided as a preference provided the transfer occurred during the preference period. See 11 U.S.C. §§ 101(54), 547(e)(3). When the debtor owns the asset that serves as the creditor's collateral at the time the security documents are executed, the transfer of the security interest occurs when the agreement is signed or when the interest is perfected by recordation. See 11 U.S.C. § 547(e)(2). However, when the debtor acquires an asset that it has agreed may serve as the creditor's collateral after these acts occur, the transfer does not occur until the debtor has acquired rights in the asset. See 11 U.S.C. § 547(e)(3).

  When a creditor's collateral is accounts receivable and inventory, its collateral is regularly being dissipated through the operation of the debtor's business, and new collateral of the same

6

type is generated. Assuming the secured creditor's security agreement has an after-acquired property clause, the debtor's acquisition of each new collateral asset constitutes a new transfer. If the transfers of this sort that occur during the preference period are avoided, the secured creditor will virtually always receive less in a chapter 7 liquidation than if the transfers were not avoided.

Burlingame does not quarrel with this basic principle. However, it contends that the principle does not apply when the secured creditor has a "blanket lien." In support of its position, Burlingame cites In re Castletons, Inc., 990 F.2d 551 (10th Cir. 1993). In Castletons, the trustee sought to avoid as preferential transfers of security interests in accounts receivable and inventory. The claims were dismissed after a trial on merits. The district court affirmed, as did the Tenth Circuit Court of Appeals. 990 F.2d at 553-60.

Like Burlingame, the secured creditor in Castletons had a security interest in virtually all of the debtor's assets, including accounts receivable and inventory. For this reason, the bankruptcy court concluded that the trustee had failed to meet her burden of proving at trial that the transfers permitted the creditor to receive more than it would have received in the chapter 7 liquidation. Id. at 554-56. It reasoned as follows:

> This case is distinctive because none of the debtor's assets, and therefore none of the potential assets of the estate, was uncovered at any time during the preference period. All were subject to Zions' floating lien. While the identity of individual items of collateral changed because of sales and subsequent

7

> acquisitions of new collateral, the overall nature of Zions' security interest remained the same. Thus, even though trustee is semantically correct when she says Zions acquired "new" collateral during the preference period, the collateral was new only to the extent of its description. In fact, so-called new collateral merely evolved from "old" collateral. Therefore, the extent of Zions' covered position remained the same throughout the preference period.

Id. at 556.[4]  Thus, the Castletons court viewed the new accounts receivable and inventory as the "proceeds" of the old accounts receivable and inventory.

The Court finds too broad the Castletons court's construction of the term "proceeds." It agrees that an account receivable generated by the sale of a piece of inventory may constitute the proceeds of the inventory and that the cash collected in payment of an account receivable may constitute the proceeds of the account receivable. It does not agree that new inventory acquired and a new account receivable generated constitutes the proceeds of prior assets of the same type produced in the operation of the debtor's business even when the creditor holds a "blanket lien."

The Bankruptcy Code does not provide a definition of the "proceeds." However, 11 U.S.C. § 552 provides a clue as to how it broadly it should be construed. Section 552(a) provides that, except

---

[4] Burlingame cited Castletons in support of an earlier motion for summary judgment filed in this proceeding in 1994. At that time, the Court found the above-cited rationale persuasive. It no longer does. In particular, the Court disagrees with the statement in Castletons that a change in the specific accounts receivable and inventory covered by the security interest is merely a change in description. Moreover, the decision in Castletons was made after a full trial, not in the context of a motion for summary judgment.

8

as provided in subsection (b), a security interest that attaches to after-acquired property is cut off as of the petition date and does not attach to property acquired by the debtor post-petition. However, Section 552(b) provides that the security interest does attach to the post-petition proceeds of the creditor's pre-petition collateral.

In a bankruptcy case, a court order is required for a creditor security interest to obtain a security interest in the debtor's assets. Notice must be given to creditors, and certain showings must be made. See 11 U.S.C. §§ 361, 362, 364. It would undermine all of the safeguards provided by these Code sections if a creditor holding a "blanket lien" could automatically claim all of the debtor's post-petition assets as its collateral.[5] Thus, the Court concludes that the first ground for Burlingame's motion for summary judgment fails.

**B. "IMPROVEMENT IN POSITION" DEFENSE**

Burlingame's second ground for its motion is that, even if the transfers did constitute preferences, it is entitled to a complete defense to their avoidance under 11 U.S.C. § 547(c)(5). As applicable to this proceeding, 11 U.S.C. § 547(c)(5) provides that the trustee may not avoid a transfer under § 547(b):

---

[5]The inappropriateness of such a broad construction of the term "proceeds" is highlighted by the nature of the Debtor's business. The Debtor held little or no inventory for sale. Third parties delivered equipment to the Debtor for electroplating. The equipment was returned to those customers when the electroplating was done. The Debtor did not own or sell the equipment. It was in a service business. The labor provided by the Debtor's employees and the raw materials supplied by vendors and used in the electroplating contributed substantially to the production of the new accounts receivable.

9

> (5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt...[at the beginning of the applicable preference period].

11 U.S.C. § 547(c)(5). This defense is generally referred to as the "improvement in position" defense. Thus, the value of an undersecured creditor's collateral on the petition date is compared with the value of its collateral at the beginning of the preference period. The transfers during the preference period are only avoidable to the extent that the first value is higher than the second.

The Trustee has presented evidence that the value of the Debtor's accounts receivable and inventory increased by $156,939. Burlingame has presented no evidence to the contrary. Instead, Burlingame contends that it is entitled to a complete defense because the Trustee will be unable to prove that the preferential transfers prejudiced unsecured creditors. See 11 U.S.C. § 547(c)(5). Again, for this contention, Burlingame relies on Castletons and its "blanket lien" theory.

The Castletons court held that, for unsecured creditors to be prejudiced by the "improvement in position" of a creditor with a floating lien in accounts receivable and inventory, there had to be other unencumbered assets. Because the secured creditor held a blanket lien and was undersecured, both at the beginning of the

10

preference period and on the petition date, in either instance, unsecured creditors would have received nothing. Therefore, the transfers did not prejudice them. This rationale makes sense only if one accepts the Castletons court's construction of the term "proceeds." Otherwise, absent the preferential transfers, all of the new accounts receivable and inventory would have been unencumbered. Failing to avoid the transfers would prejudice unsecured creditors by depriving them of recourse to these new assets. As discussed above, the Court finds too broad the Castletons court's construction of the term "proceeds."

The Court finds more illuminating the following comment from a noted bankrutpcy treatise:

> The increase in value [of the accounts receivable and inventory collateral] attributable to the debtor's additional investment of labor and materials would represent an improvement "to the prejudice of other creditors holding unsecured claims." If however, the secured creditor financed the cost of labor and materials, or had an unavoidable security interest in those materials, such an increment of improvement would not prejudice other creditors, and would thus not be recoverable as a preference.

5 Collier on Bankruptcy ¶ 547.94[5] at 547-72. Burlingame cited this comment in support of its position. However, it failed to provide any evidence that it financed the cost of at least some of the labor that generated the collateral in which it obtained new security interests during the Preference Period. The Trustee, on the other hand, has presented evidence that Burlingame failed to finance the

11

cost of that labor.[6] Therefore, the second ground for Burlingame's motion for summary judgment, based on its contention that it is entitled to a complete defense under 11 U.S.C. § 547(c)(5), must also fail.[7]

**CONCLUSION**

For the reasons stated above, Burlingame's motion for summary judgment will be denied. Counsel for the Trustee is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

---

[6] In all likelihood, there were also unpaid trade claims that contributed to the value of the new accounts receivable and inventory. The Trustee has failed to present any evidence of such claims. However, since this pertains to a defense, the Trustee did not bear the burden of coming forward with the evidence.

[7] Clearly, Burlingame is entitled to a partial defense under 11 U.S.C. 547(c)(5). The evidence before the Court at present suggests that the limit of its liability, based on its "improvement of position" is $156,939. However, if the unpaid wage and trade claims incurred during the preference period prove to be less than this amount, because of the "prejudice to unsecured creditors" requirement of 11 U.S.C. § 547(c)(5), Burlingame's liability may be less than $156,939.

12

COURT SERVICE LIST

William W. Huckins
Allen, Matkins, Leck, Gamble, Mallory et al.
3 Embarcadero Center 12th Fl.
San Francisco, CA 94111

Reidun Stromsheim
Law Offices of Stromsheim and Assoc.
201 California St. #350
San Francisco, CA 94111