Entered on Docket
December 11, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: December 11, 2007

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>QMECT, INC.,<br><br>        Debtor.<br>_____/ | No. 04-41044 TK<br>Chapter 7 |
| QMECT, INC.,<br><br>        Plaintiff,<br><br>  vs.<br><br>BURLINGAME CAPITAL PARTNERS,<br>II, L.P.; ELECTROCHEM FUNDING,<br>LLC,<br><br>        Defendants.<br>_____/ | A.P. No. 04-4171 AT |

**MEMORANDUM OF DECISION**

Defendant Burlingame Capital Partners, II, L.P. ("Burlingame") asks the Court to reconsider its memorandum decision (the "Memorandum") denying Burlingame's motion for summary judgment in this preference action. In this adversary proceeding, Plaintiff John T. Kendall, chapter 7 trustee, (the "Trustee") seeks to avoid as preferential the security interests in inventory and accounts

receivable and their proceeds acquired by Burlingame during the preference period to the extent of Burlingame's "improvement of position." See 11 U.S.C. § 547(c)(5). Burlingame contends that the Court made clear error, justifying reconsideration, when it concluded that these transfers gave Burlingame more than it would have received in a liquidation; see 11 U.S.C. § 547(b)(5); and that its secured position "improved" during the preference period; see 11 U.S.C. § 547(c)(5). Each of these arguments will be addressed below.

**SUMMARY OF UNDISPUTED FACTS**

The Debtor filed a chapter 11 bankruptcy petition on February 27, 2004. Prior to the filing and during the chapter 11 phase of the case, before the case was converted to chapter 7, the Debtor operated an electroplating business. Customers of the Debtor would supply objects to the Debtor which the Debtor, using chemicals, would electroplate and return to their owners. These operations generated accounts receivable. Although not held for sale, the chemicals qualified as the Debtor's inventory.[1] See Cal. Comm. Code § 9102(48)(D) ("materials used or consumed in a business").

At the beginning of the preference period--on December 27, 2003--the Debtor had two secured creditors. The senior secured creditor was Comerica Bank ("Comerica"). The junior secured creditor was Burlingame. Both Comerica and Burlingame had security interests in

---

[1] In its original decision, the Court referred to new inventory being "generated." This verb was misleading. The Debtor provided a service; while it may have acquired inventory, it did not "generate" inventory.

virtually all of the Debtor's assets, which included accounts receivable and inventory.[2]

At all times during the preference period, Burlingame was undersecured: i.e, the value of its collateral, taking into account the amount of the senior secured debt, was less than the amount of Burlingame's debt. During the preference period, some, if not all, of the accounts receivable in which Burlingame held a security interest at the beginning of the preference period generated cash proceeds. These proceeds were then spent in the continued operation of the business, and new accounts receivable were generated.

Pursuant to the after-acquired property clause in Burlingame's security agreement, Burlingame automatically acquired liens in the new accounts receivable generated during the preference period. On the petition date, the value of Burlingame's security interest in the Debtor's accounts receivable and inventory then in existence was greater than the value of its security interest in the accounts receivable and inventory in existence at the beginning of the preference period.[3] On the petition date, the Debtor was subject to

---

[2] Shortly before the Debtor's bankruptcy petition was filed, Burlingame purchased Comerica's secured claim. Shortly after the petition was filed, the principals of Burlingame formed defendant Electrochem Funding LLC ("Electrochem"), and the secured claim acquired from Comerica was transferred to Electrochem.

[3] The Trustee's opposition to the motion incorporates the Declaration of Marc Lumer (the "Lumer Declaration"), the Debtor's accountant during the chapter 11, filed in support of his opposition to Burlingame's previous motion for summary judgment. The Lumer Declaration states that the increase in the value of the accounts receivable and inventory was $156,939.

3

Case: 04-04171    Doc# 89    Filed: 12/11/07    Entered: 12/11/07 11:27:31    Page 3 of 19

unpaid employee wage claims for services provided during the preference period and may also have been subject to unpaid vendor claims for goods provided during the preference period.[4]

## APPLICABLE LAW

### A. MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That burden may be met either by producing evidence sufficient to entitle the moving party to judgment in its favor or by raising a point of law with the same effect based on the undisputed facts.

If the moving party meets its initial burden by producing evidence, the party opposing the motion must come forward with specific facts establishing a genuine factual issue and may not rely on mere allegations or denials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The trial judge must accept as true all

---

[4]Schedule E of the Debtor's Schedules of Assets and Liabilities, which is attached to the Lumer Declaration, lists $83,433 in unpaid priority wage claims. As applicable to the Debtor's case, priority wage claims must have arisen during the 90 days preceding the filing of the petition. See 11 U.S.C. § 507(a)(4)(A) (formerly 11 U.S.C. § 507(a)(4)(A)). See Pub. L. No. 109-8, §§ 212, 1401, 119 Stat. 23, 51, 214.

4

evidence offered by the party opposing the motion and must draw all legitimate inferences in its favor. <u>Windon Third Oil and Gas Drilling P'ship v. Federal Deposit Ins. Corp.</u>, 805 F.2d 342, 346 (10th Cir. 1986), <u>cert. denied</u> 480 U.S. 947 (1987). Where the moving party's contention is that the plaintiff's claim must fail as a matter of law, based on undisputed facts, the motion may be decided without any additional evidence. <u>See</u> <u>Thrifty Oil Co. v. Bank of American Nat'l Trust & Sav. Ass'n</u>, 322 F.3d 1039, 1046 (9th Cir. 2003).

The plaintiff has the burden of proof with respect to the main elements of a preference claim. 11 U.S.C. § 547(g). The defendant has the burden of proof with respect to any affirmative defense asserted to a preference claim. <u>Id</u>.

**B. MOTION FOR RECONSIDERATION**

Motions for reconsideration, if filed within ten days of the entry of the order or judgment, are considered under the standards applicable to motions to alter or amend judgments. <u>See</u> Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023 (making Rule 59 applicable to bankruptcy cases). Such motions may be granted on four grounds: (1) the judgment is based upon manifest errors of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) amendment is necessary to prevent manifest injustice; or (4) there is intervening change in the controlling law. <u>McDowell v. Calderon</u>, 197 F.3d 1253, 1255 (9th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1082 (2000); <u>In re Arden Properties, Inc.</u>, 248 B.R. 164, 168 (Bankr. D. Ariz. 2000). Whether to grant or deny such a motion is entrusted to the

sound judgment of the trial court. Burlingame does not present any newly discovered or previously unavailable evidence nor does it contend that there has been an intervening change in the law. Rather, Burlingame contends that, in denying its motion for summary judgment, the Court made manifest errors of law and that amendment is necessary to prevent a manifest injustice from occurring.

## DISCUSSION

Burlingame based its motion for summary judgment on two grounds. First, it contended that, as a matter of law, under the facts recited above, the Trustee could not establish that the transfers of security interests in the accounts receivable and inventory acquired during the preference period permitted Burlingame to receive more than it would have received in a chapter 7 liquidation had the transfers not occurred. 11 U.S.C. § 547(b)(5). Second, Burlingame contended that, even if the Trustee could establish this element of a preference claim, it would be entitled to a complete defense under 11 U.S.C. § 547(c)(5). The motion for reconsideration reiterates these two contentions. The Court will address each argument in turn.

**A. FIFTH ELEMENT OF A PREFERENCE CLAIM**

As relevant to this proceeding, 11 U.S.C. § 547(b) provides that, "[e]xcept as provided in subsection (c)..., the trustee may avoid any transfer of an interest of the debtor in property–

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

6

(4) made–

 (A) on or within 90 days before the date of the filing of the petition;...

(5) that enables such creditor to receive more than such creditor would receive if–

 (A) the case were a case under chapter 7 of this title;

 (B) the transfer had not been made; and

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Each of the elements recited above must be established for the trustee to prove a claim to avoid a preferential transfer by the debtor. Section 547(e)(3) provides that, for purposes of section 547, "a transfer is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3).

 As noted above, in its motion for summary judgment, Burlingame contended that the Trustee would be unable, as a matter of law, to establish the fifth element of a preference claim: i.e., that the transfers of security interests in the accounts receivable generated and inventory acquired during the preference period permitted it to receive more than if the transfers had not been made and the assets of the debtor had been liquidated in accordance with bankruptcy law.[5] In support of its position, Burlingame relied on In re Castletons, Inc., 990 F.2d 551 (10th Cir. 1993). In Castletons, the trustee

---

[5] For this purpose, it must be assumed that the liquidation occurred on the date the bankruptcy petition was actually filed, not on the date of the transfer. Castletons, 990 F.2d at 554 (citing Palmer Clay Prods. Co. v. Brown, 297 U.S. 227, 229 (1936)).

7

sought to avoid as preferential transfers of security interests in accounts receivable and inventory. The claims were dismissed after a trial on merits. The district court affirmed as did the Tenth Circuit Court of Appeals. 990 F.2d at 553-60.

Like Burlingame, the secured creditor in Castletons had a security interest in virtually all of the debtor's assets, including accounts receivable and inventory--that is, a "blanket lien." The security interest was duly perfected before the commencement of the preference period. The Castletons court concluded that, under these circumstances, it was impossible for the trustee to prove the fifth element of a preference claim. It reasoned as follows:

> Wile the identity of individual items of collateral changed because of sales and subsequent acquisitions of new collateral, the overall nature of...[the secured creditor's] security interest remained the same. Thus, even though trustee is semantically correct when she says...[the secured creditor] acquired "new" collateral during the preference period, the collateral was new only to the extent of its description. In fact, the so-called new collateral merely evolved from "old" collateral. Therefore, the extent of...[the secured creditor's] covered position remained the same throughout the preference period.

Id. at 556.

Thus, although the Castletons court acknowledged the existence of 11 U.S.C. § 547(e)(3), it failed to apply the statute as written. The Castletons court reasoned that, because the "new" collateral was the "proceeds" of the secured creditor's "old" collateral, it was essentially the "same" collateral, and no new transfers occurred during the preference period. However, this was not the case. The

8

difference between the "old" accounts receivable and inventory and the "new" accounts receivable and inventory was not purely semantic; it was literal. The <u>Castletons</u> court created a legal fiction that the old and new assets were the same assets to prevent what it viewed as an unfair result.

George Santayana wrote that: "Those who cannot study history, are doomed to repeat it." The <u>Castletons</u> court may not have been made aware of a similar legal fiction created by some courts prior to the enactment of the Bankruptcy Code. To prevent the avoidance of transfers of security interests in accounts receivable and inventory under similar circumstances, these courts created a legal fiction that the relevant transfer occurred when the security agreement was created and perfected. Assuming this occurred prior to the commencement of the preference period, this pre-Bankruptcy Code legal fiction protected the transfers of security interests in the accounts receivable and inventory acquired by the debtor during the preference period from avoidance as preferential transfers. <u>See</u> <u>DuBay v. Williams</u>, 417 F.2d 1277, 1287-88 (9th Cir. 1969); <u>Grain Merchants of Ind., Inc. v. Union Bank & Savings Co.</u>, 408 F.2d 209, 212 (7th Cir. 1969).

When the Bankruptcy Code was enacted, both this legal fiction and the equitable need for it were eliminated. <u>See</u> S. Rep. No. 95-989, at 89 (stating that § 547(e)(3) was enacted to overrule <u>DuBay</u> and <u>Grain Merchants</u>); <u>see also</u> 11 U.S.C. § 547(c)(5)(creating a defense for such transfers to the extent the creditor's overall secured position was not "improved" as a result of the transfers).

9

The legal fiction applied by the <u>Castletons</u> court is simply the <u>DuBay</u> and <u>Grain Merchants</u> legal fiction under another name. Given the legislative history recited above, employing such a legal fiction is both inappropriate and unnecessary.

In the Memorandum, the Court did not focus on this legal fiction but rather took issue with the <u>Castletons</u> court's definition of the term "proceeds." In its motion for reconsideration, Burlingame contends that the Court committed clear error in its construction of the term "proceeds." It also contends that the Court's construction of the term is inconsistent with its construction of the term in connection with Burlingame's motion for relief from stay. The Court's decision in that contested matter has since been affirmed by the United States District Court for the Northern District of California. See <u>In re Qmect, Inc.</u>, 373 B.R. 682 (N.D. Cal. 2007). Burlingame contends that the Court is bound by principles of collateral estoppel and law of the case to abide by its prior definition of "proceeds."

The Court continues to believe that, given the nature of Burlingame's business, the proceeds of Burlingame's security interest did not include new accounts receivable although the "floating lien" contained in its security agreement did cause its security interest to attach to them. However, even if the Court's narrow reading of the term "proceeds" is incorrect, the result is still the same. The transfer of a security interest in an account receivable created during the preference period is subject to avoidance as a preference even if the account receivable in question

10

is the "proceeds" of inventory in existence prior to the beginning of the preference period.[6] Without the legal fiction that a different asset is really not a different asset, but merely a change in description, the result is a potentially avoidable transfer.[7]

Castletons is a Tenth Circuit decision and thus not binding on this Court. However, Burlingame contends that the rationale employed by the Castletons court was adopted by the Ninth Circuit in Smith's Home Furnishings, Inc., 265 F.3d 959 (9th Cir. 2000) and must therefore be followed by this Court. The problem with this argument is that there is a substantial difference between this case and Smith's, both with respect to the nature of the claim and the underlying facts.

In Smith's, the trustee sought to avoid *payments* made to a secured creditor during the preference period, not transfers of security interests. Second, the trustee failed to prove that the secured creditor was not at all times fully secured. The significance of the latter difference is that, even if the challenged payments had not been made, the fully secured creditor would still

---

[6] Section 547(c)(5) provides statutory evidence for this proposition. Section 547(c)(5) provides a defense to avoidance as a preference for transfers of security interests in accounts receivable and inventory "or the proceeds of either" occurring during the preference period to the extent the secured creditor's secured position has not been "improved." See 11 U.S.C. § 547(c)(5). If transfers in "proceeds" are not subject to preference attack, this phrase would be unnecessary.

[7] Because the Court's ruling on this issue no longer turns on the definition of "proceeds," several of the cases cited by Burlingame are no longer relevant and will not be discussed. See e.g. In re Filtercorp, Inc., 163 F.3d 570 (9th Cir. 1998); In re Bumper Sales, Inc., 907 F.2d 1430 (4th Cir. 1990).

11

have been paid in full. The payments challenged as preferential did not give the creditor more because the creditor could never receive more than full payment of its debt.[8] The Court does not read Smith's as adopting the Castletons court's legal fiction that a new asset is simply an old asset with a new description.

In sum, the Court continues to conclude that the Burlingame is not entitled to summary judgment on the fifth element of the preference claim. However, the motion for reconsideration is granted to the extent that the Court's rationale for this conclusion has "evolved."

**B. "IMPROVEMENT IN POSITION" DEFENSE**

Burlingame's second ground for its motion for summary judgment was that, even if the transfers did constitute preferences, it is entitled to a complete defense to their avoidance under 11 U.S.C. § 547(c)(5). In the Memorandum, the Court held that Burlingame was only entitled to a limited defense. In its motion for reconsideration, Burlingame contends that the Court committed clear error in reaching this conclusion as well.

Section 547(c)(5) provides that the trustee may not avoid a transfer under § 547(b):

> (5) that creates a perfected security interest
> in inventory or a receivable or the proceeds of

---

[8] The Smith's court did mention in this context that all payments to the creditor came from its collateral. Smith's 225 F.3d at 965. However, as discussed above, since the creditor was fully secured and would have been paid in full in a liquidation even if it had received no payments, the payments could not have been avoided regardless of their source. Thus, the Court views this reference as dicta.

12

> either, except to the extent that the aggregate of all transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt...[at the beginning of the applicable preference period].

11 U.S.C. § 547(c)(5). This defense is generally referred to as the "improvement in position" defense. Thus, the value of an undersecured creditor's collateral in relationship to its debt on the petition date is compared with the value of its collateral in relationship to its debt at the beginning of the preference period. The transfers during the preference period are only avoidable to the extent that its undersecured position on the earlier date is greater than its undersecured position on the later date.

The Trustee presented evidence that the value of the Debtor's accounts receivable and inventory increased by $156,939 during the preference period. Burlingame presented no evidence to the contrary. Nevertheless, Burlingame contended that it was entitled to a complete defense because the Trustee would be unable to prove that the preferential transfers prejudiced unsecured creditors. See 11 U.S.C. § 547(c)(5). Again, for this contention, Burlingame relied on Castletons and its "blanket lien" theory.

The Castletons court held that, for unsecured creditors to be prejudiced by the "improvement in position" of a creditor with a floating lien in accounts receivable and inventory, there had to be other unencumbered assets. Because the secured creditor held a blanket lien and was undersecured, both at the beginning of the

13

preference period and on the petition date, in either instance, unsecured creditors would have received nothing. Therefore, the transfers did not prejudice them.

In the Memorandum, in rejecting this rationale, the Court noted that the rationale only made sense if one accepted the <u>Castletons</u> court's construction of the term "proceeds." Otherwise, absent the preferential transfers, all of the new accounts receivable and inventory would have been unencumbered. Failing to avoid the transfers would prejudice unsecured creditors by depriving them of recourse to these new assets.

As with the previous issue, the Court now concludes that the critical error in the <u>Castletons</u> court's rationale is not its construction of the term "proceeds." Rather, its critical error is its apparent assumption that the transfer of a security interest in an asset created or acquired during the preference period is not avoidable when the asset so created or acquired is the "proceeds" of an asset encumbered by the same security interest in existence prior to the commencement of the preference period. As discussed above, that assumption is incorrect.

However, in its reply to the Trustee's opposition to its motion for reconsideration, Burlingame raised a new argument for its contention that it has a complete defense under 11 U.S.C. § 547(c)(5). In its reply and at the hearing on the motion, Burlingame argued that its "position" had not "improved" because its debt had increased during the preference period, due to the accrual of interest and late fees, even more than the value of its collateral

14

had increased.[9] Because the Trustee had not had a fair opportunity to address this argument, the Court permitted the parties to submit post-hearing briefs.

In his post-hearing brief, the Trustee asserted that, for purposes of determining a secured creditor's "improvement in position" pursuant to 11 U.S.C. § 547(c)(5), the only changes in the "debt" during the preference that should be considered were increases due to additional "advances" or decreases pursuant to additional "payments." Increases in the debt other than additional advances should not be considered. The Trustee conceded that he had found no express support for this proposition in legal treatises or case law.[10] He based his assertion primarily on policy grounds.

The Trustee noted that, if the transfers attacked as preferences had been payments rather than transfers of security interests and Burlingame were asserting a "new value" defense pursuant to 11 U.S.C. § 547(c)(3), increases due to interest, late charges, and attorneys' fees would not qualify as "new value." See 11 U.S.C. § 547(a)(2)(defining "new value" as "money or money's worth in goods, services, or new credit"). He also observed that 11 U.S.C. § 506(b) excludes post-petition interest and attorneys' fees from an

---

[9] Burlingame correctly noted that the amount of the increase was the subject of a final judgment in a related adversary proceeding.

[10] The Trustee did cite language from two respected legal treatises that referred to changes in the debt due to "advances" in their discussion of the "improvement in position" defense. However, nothing in the citations directly addressed the issue presented here.

15

undersecured creditor's secured claim. He acknowledged that in a contested matter in the underlying case, the Court has concluded that, notwithstanding 11 U.S.C. § 506(b), Burlingame's unsecured claim may include its post-petition attorneys' fees. However, he correctly noted that this opinion was the subject of substantial controversy. Finally, he contended that the factual issue of the amount of the increase of Burlingame's debt during the preference period was not actually litigated in the related adversary proceeding. Therefore, the Trustee argued the Court's determination of the amount of Burlingame's debt should not bind the Trustee in this adversary proceeding.[11]

Burlingame responded to each of these arguments. First, it noted that statutory construction must begin with the language of the statute, not with policy. When the language of the statute is clear, policy need not and should not be consulted. Burlingame correctly noted that 11 U.S.C. § 547(c)(5) refers only to "debt," not to "advances" or "new value." Second, unless otherwise indicated, the definition of terms used in the Bankruptcy Code are governed by state law. Under state law, the additional interest, late fees, and attorneys' fees incurred during the preference period would clearly

---

[11] The Trustee also argued that the litigation in this adversary proceeding had not been conducted "fair and square." He noted that, as trustees frequently are, he was at a disadvantage by not having been involved in the underlying case and the various adversary proceedings from their onset. He contended that this made the late assertion of the argument concerning the increase in debt particularly unfair. However, the Trustee failed to request additional time to brief this late raised issue. Had he asked for it, the Court would have provided the Trustee with any reasonable amount of time required to compensate for this disadvantage.

16

be considered part of the "debt." Moreover, 11 U.S.C. § 506(b) excludes only "post-petition" interest and attorneys' fees from an undersecured creditor's secured debt.

Finally, Burlingame took issue with the Trustee's contention that the amount of its debt was not actually litigated in the related adversary proceeding. To the contrary, it contended, this and all other matters were fiercely litigated. Even though the other party to the litigation was the Debtor, not the Trustee, the ultimate party in interest was the bankruptcy estate. Therefore, the Trustee should be bound by the determination in that proceeding.

The Court finds the arguments made and authority cited by Burlingame more persuasive than those advanced by the Trustee. Section 547(c)(5) refers to "debt." "Debt" is defined as "liability on a claim." See 11 U.S.C. § 101(12). "Claim" is defined extremely broadly and would certainly include pre-petition interest, late fees, and attorneys' fees. See 11 U.S.C. § 101(5).

Section 506(b), which excludes post-petition interest and attorneys' fees from an undersecured creditor's secured claim, has no bearing on the amount of the secured creditor's debt, either as of the petition date or 90 days before that date. Finally, the determination of Burlingame's debt was actually litigated. Because the Court found that the form of Burlingame's proof of claim was inadequate to shift the burden of production to the Debtor and at the insistence of the Debtor, Burlingame was required to prove each element of its claim in excruciating detail.

17

**CONCLUSION**

For the reasons stated above, Burlingame's motion for reconsideration will be granted. The Court reaffirms its original decision that the Trustee is able to establish all the elements of a preferential transfer claim, including 11 U.S.C. § 547(b)(5), although the reasons for its decision have altered somewhat. However, the Trustee does not contend that value of Burlingame's collateral increased during the preference period by more $157,000. The Court has already determined the amount of Burlingame's debt increased during the same period by at least $165,184. Therefore, the Court finds that Burlingame is entitled to a complete defense under 11 U.S.C. § 547(c)(5). Thus, the Court will grant summary judgment in favor of Burlingame. Burlingame is directed to submit a proposed order and judgment in accordance with this decision.

END OF DOCUMENT

18

COURT SERVICE LIST

William W. Huckins
Allen, Matkins, Leck, Gamble, Mallory et al.
3 Embarcadero Center 12th Fl.
San Francisco, CA 94111

Reidun Stromsheim
Law Offices of Stromsheim and Assoc.
201 California St. #350
San Francisco, CA 94111